FILED
 2011 Dec-27 PM 01:14
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LINDA R. SMITH,** | } |
| **Plaintiff,** | } |
| v. | } |
| | }  Case No.: 4:11-CV-00071-RDP |
| **MICHAEL J. ASTRUE,** | } |
| **COMMISSIONER OF SOCIAL** | } |
| **SECURITY,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Linda R. Smith brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under the Act. 42 U.S.C. § 405(g).

## I. Proceedings Below

Plaintiff filed her application for a period of disability and DIB on April 13, 2009. [R. 60]. Plaintiff alleged a disability onset date of December 1, 2008. [R. 127]. Plaintiff's applications were denied on June 18, 2009 [R. 62]. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). [R. 71-74]. In his September 2, 2010 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform light work with restrictions. [R. 15, 25]. After the Appeals Council denied Plaintiff's request for review

of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1]. 42 U.S.C. § 405(g).

At the time of the hearing in question, Plaintiff was 42 years old and had received a GED, an Associate's degree, and a commercial drivers license (CDL). [R. 36-37]. Plaintiff had previously worked as a truck driver, a service station and department store clerk, an eye-care specialist, a cleaner, and a certified nursing assistant. [R. 153]. Plaintiff alleges that she suffers from arthritis, morbid obesity, diabetes, sleep apnea, bursitis, depression, carpal tunnel syndrome, osteoarthritis, calceneal heel spurs, and fibromyalgia. [R. 141; Pl.'s Mem. 4]. According to Plaintiff, she has been unable to engage in substantial gainful activity since December 1, 2008 due to these impairments. [R. 141].

Plaintiff complains that hip and knee pain prevents her from either sitting or standing for long periods of time. [R. 40]. Plaintiff states that she can only stand for 15-20 minutes and walk for 10-15 minutes before experiencing pain. [R. 41]. She further states that she can only sit for 30-45 minutes before experiencing "stabbing" pain in her hip, requiring her to stand. [R. 41]. Plaintiff also complains of shoulder pain, as well as tingling in her fingers and difficulty grasping objects. [R. 42]. Plaintiff states that she suffers from sleep apnea, which causes her to fall asleep without warning when she is not engaged in an activity. [R. 43]. Plaintiff is uninsured and testified that she only takes over-the-counter pain medication because she cannot afford to go to a doctor and get a prescription. [R. 35, 50].

In May 2009, Plaintiff was examined by Dr. Charlotte Menzel at the behest of the Social Security Administration. [R. 187-90]. After a physical examination, Dr. Menzel diagnosed Plaintiff with the following: morbid obesity; right wrist pain, likely a symptom of carpal tunnel syndrome;

right knee pain, likely due to mild osteoarthritis; obesity-related right foot strain; sleep apnea; poorly-controlled diabetes mellitus; and depression. [R. 190].

In November 2009, Plaintiff's attorney arranged for her to be examined by Dr. David McLain. [35, 221-27]. Upon examination, Dr. McLain diagnosed Plaintiff with the following: osteoarthritis of the lumbar spine, hips and right knee; a calcaneal heel spur; fibromyalgia; hypertension; hypercholesterolemia; and status post cervical cancer, stage IV. [R. 221]. In addition to his examination, Dr. McLain also completed a physical capacities questionnaire provided by Plaintiff's attorney, in which he opined that Plaintiff could only lift 10 pounds, sit for four hours in an eight hour work day, and stand or walk for one hour of an eight hour work day. [R. 57, 226]. Dr. McLain further opined that Plaintiff could never push or pull with leg controls, bend or stoop, or work with hazardous machinery. [R. 226]. He stated that Plaintiff could rarely[1] grasp, twist, or handle objects, and could only occasionally[2] reach overhead or drive motor vehicles. [R. 226]. Finally, Dr. McLain concluded that Plaintiff was likely to miss more than four days of work per month due to her impairments. [R. 226].

In response to a hypothetical question presented by Plaintiff's attorney during the hearing, a vocational expert ("VE") testified that the restrictions noted in Dr. McLain's evaluation would preclude employment. [R. 57-58].

## II. ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the

---

[1]The evaluation worksheet defined "rarely" as 1-5% of an 8-hour work day.

[2]The evaluation worksheet defined "occasionally" as 6-33% of an 8-hour work day.

Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2008, and that Plaintiff acquired sufficient quarters of coverage to remain fully insured through December 31, 2013. [R. 13]. Based upon the medical evidence presented, the ALJ concluded that Plaintiff has osteoarthritis in the hips and right knee, carpal tunnel syndrome, diabetes mellitus,

obstructive sleep apnea, and morbid obesity, each of which are "severe" impairments as defined by the Act. [R. 13]. Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements for any impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15].

According to the ALJ, Plaintiff's subjective complaints and Dr. McLain's opinion concerning Plaintiff's impairments (and their impact on her ability to work) are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. [R. 19-22]. After consideration of all the medical evidence, the ALJ found that Plaintiff retains the residual functional capacity to perform less than the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and that she has the following limitations: she must alternate between sitting and standing at one hour intervals while remaining at her work station; she can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps; she cannot climb ropes, ladders, or scaffolds; occasionally reach overhead; she can frequently handle and finger objects with both hands; she must avoid concentrated exposure to extreme temperatures, wetness, humidity, and excessive vibration; she must avoid all exposure to unprotected heights and hazardous machinery; and she is limited to performing simple, routine, and repetitive one to two step tasks in a low stress job, defined as only requiring occasional decision making and involving only occasional changes in the work setting. [R. 15].

The ALJ concluded that Plaintiff is unable to perform her past relevant work and that transferability of job skills is immaterial to the determination of disability because Plaintiff is not disabled under the Medical-Vocational Rules. [R. 24]. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 82-41, 1982 WL 31389. The ALJ further found that there are a significant number of jobs

in the national economy which Plaintiff could perform, all of which allow Plaintiff to work with the above-mentioned limitations. [R. 24-25]. Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act, and therefore, is not entitled to a period of disability or DIB. [R. 25].

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. [Pl.'s Mem. 14.] Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the ALJ arbitrarily rejected Dr. McLain's uncontroverted medical testimony in determining her residual functional capacity. [*See* Pl.'s Mem. 2, 12-13].

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V.  Discussion

**A.    The ALJ Properly Weighed the Medical Evidence in the Record.**

Plaintiff agrees with the ALJ's finding that she suffers from osteoarthritis of the hips and right knee, carpal tunnel syndrome, diabetes mellitus, sleep apnea, and morbid obesity. [Pl.'s Mem. 4]. However, Plaintiff argues that the ALJ erred in arbitrarily rejecting Dr. McLain's uncontroverted opinion that she also suffers from calcaneal heel spurs, osteoarthritis of the lumbar spine, and fibromyalgia. [Pl.'s Mem. 4, 12-13]. As such, Plaintiff contends that the ALJ erred by disregarding the VE's testimony that the impairments diagnosed by Dr. McLain would prevent her from maintaining employment. [Pl.'s Mem. 11].

Plaintiff's arguments are misplaced because the ALJ determined that Dr. McLain's evaluation regarding her residual functional capacity was to be given only partial weight due to its lack of evidentiary support, inconsistency, and overall sloppiness. [R. 19-20]. Because Dr.

7

McLain's assessment only warranted partial weight, it was not improper for the ALJ to disregard the VE's testimony based on that assessment.

In evaluating a claimant's application for disability, the ALJ is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). In the context of medical evidence, controlling weight must be given to a medical opinion from a treating source[3] when the opinion is both well-supported by medically acceptable diagnostic techniques and consistent with the record in its entirety. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-2p, 1996 WL 374188 (July 2, 1996). Therefore, the ALJ is neither required to give controlling weight to a non-treating physician's opinion regarding a claimants residual functional capacity, nor to accept the VE's response to a hypothetical question based on *any* physician's inadequately supported opinion. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Ultimately, the ALJ declined to give Dr. McLain's opinion controlling weight because he found it to be "replete with inconsistencies, sloppiness, and questionable conclusions." [R. 19]. The ALJ rejected Plaintiff's argument that Dr. McLain's evaluation warranted controlling weight due to his use of x-rays and other diagnostic tests, noting that Dr. Menzel was able to make similar diagnoses without using such tests. [R.18-19]. The ALJ also questioned Dr. McLain's reliance on

---

[3] Neither Dr. Menzel nor Dr. McLain were "treating sources" under the Act. *See* 20 C.F.R. § 404.1502 (defining a treating source as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you" and stating that a doctor visited "solely [for] your need to obtain a report in support of your claim for disability" will be considered a nontreating source).

Plaintiff's uncorroborated statements concerning her past medical history and his failure to thoroughly address each of Plaintiff's alleged disabling conditions. [R. 23].

Specifically, the ALJ rejected Dr. McLain's diagnoses of hypertension, high cholesterol, and fibromyalgia because they were unsupported by any legitimate diagnostic tests and inconsistent with Dr. McLain's own examination notes. [R. 19-20]. Calling the diagnoses "bewildering," the ALJ noted that Plaintiff's blood pressure was nearly ideal, despite her morbid obesity. [R. 19]. The ALJ similarly rejected the assessment of high cholesterol because Dr. McLain failed to conduct the necessary diagnostic blood tests. [R. 19].

In evaluating Plaintiff's fibromyalgia diagnosis, the ALJ interpreted Dr. McLain's assessment notes to say that he diagnosed Plaintiff with fibromyalgia after finding that she had 16 of 18 trigger points in her pelvis.[4] [R. 18]. The ALJ then noted that the trigger points are not located exclusively in the pelvis, and concluded that Dr. McLain either made an erroneous diagnosis or recorded his findings in the wrong section. [R. 18]. Ultimately, the ALJ rejected Dr. McLain's finding, pointing out the subjective nature of diagnosing fibromyalgia and the lack of corroborating evidence within the record. [R. 21]. The ALJ specifically noted that Dr. Menzel's evaluation never suggested that Plaintiff suffered from fibromyalgia. [R. 21]. As with the hypertension and high cholesterol diagnoses, the ALJ found that the "totality of the inaccuracies" and "lack of completeness" of Dr. McLain's report undercut his diagnosis of fibromyalgia. [R. 21].

The ALJ also noted that Dr. McLain conspicuously failed to address Plaintiff's alleged carpal tunnel syndrome and sleep apnea. [R. 19-20]. Although Dr. McLain noted three times that Plaintiff experienced numbness in her wrists and hand, he did not test for a positive Tinnel sign or Phalen's

---

[4]Dr. McLain's finding was actually recorded in a section labeled "spine, ribs, pelvis." [R. 224].

sign, nor did he x-ray her wrists and hands, despite x-raying various other parts of her body. [R. 223-25]. The ALJ found this omission to be indicative of either Dr. McLain's negligence in examining Plaintiff or his unwillingness to report any evidence that Plaintiff does not suffer from carpal tunnel. [R. 19]. Similarly, the ALJ noted that Dr. McLain neither mentioned nor diagnosed sleep apnea, despite Plaintiff's ongoing allegation that she suffers from the condition. [R. 19-20].

Beyond these unsupported diagnoses and omissions, the ALJ noted several additional inconsistencies that led him to give Dr. McLain's opinion only partial weight. [R. 20]. Despite observing that Plaintiff was "markedly obese," Dr. McLain's assessment incorrectly listed Plaintiff's body mass index as being 25.18, a measurement on the "cusp of normal weight." [R. 17, 224]. Under the category "memory" on his evaluation sheet, Dr. McLain reported that Plaintiff had a "depressed mood." [R. 224]. However, under the category "mood/affect," Dr. McLain reported Plaintiff had "no obvious depression, anxiety, or agitation." [R. 224]. In the questionnaire provided by Plaintiff's attorney, Dr. McLain opined that Plaintiff could not operate leg controls,[5] but could occasionally operate a motor vehicle. [R. 226].

The ALJ also found that the physical capabilities form supplied by Plaintiff's attorney and completed by Dr. McLain was unreliable because single questions addressed multiple, distinct aspects of Plaintiff's abilities. [R. 20]. The ALJ determined that the structure of the questions caused Dr. McLain to evaluate Plaintiff's ability to do the most difficult task listed, thereby giving a false impression that Plaintiff could not perform the easier tasks. [R. 20-21]. The ALJ found that

---

[5]The questionnaire asked how often Plaintiff could push and pull using arm and/or leg controls during an 8-hour work day. Dr. McLain underlined the word "leg" in the question, indicating that his answer only pertained to leg controls, and answered that Plaintiff could never use such controls. [R. 226].

such questions were likely to give a misleading picture of Plaintiff's abilities, and therefore undermined the reliability of both the form itself and Dr. McLain's answers. [R. 20-21].

The ALJ further found that parts of Dr. McLain's assessment were inconsistent with Plaintiff's own testimony about her physical abilities. [R. 20, 23]. Although Plaintiff testified that she sometimes drives from her home to Birmingham, an hour-long trip each way, Dr. McLain opined that Plaintiff could not use foot pedals, presumably found in a car. [R. 45, 226]. Plaintiff also claimed to suffer from severe foot swelling, yet Dr. McLain reported that Plaintiff had swelling in her ankles but not her feet. [R. 141, 224]. The ALJ also questioned Dr. McLain's failure to prescribe pain medication for Plaintiff, despite diagnosing her with multiple severe impairments and debilitating pain. [R. 23, n. 3]. The ALJ found that Dr. McLain's inaction "raised concerns about his competence and...[the] reliability of his assessment." [R. 23, n. 3].

The totality of these inconsistencies, unsupported diagnoses, and omissions led the ALJ to give Dr. McLain's opinion only partial weight. The task before this court is simply to determine whether the ALJ's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Because the ALJ's decision to give Dr. McLain's opinion only partial weight is indeed supported by substantial evidence, the ALJ's decision is due to be affirmed.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.

The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

  **DONE** and **ORDERED** this   27th   day of December, 2011.

                       _____
                       **R. DAVID PROCTOR**
                       UNITED STATES DISTRICT JUDGE